UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
FRANKLIN VINICIO LASSO MEJIA, BRAYAN VINICIO
CHARCO PACA, DEYBI LARRI VERA TOMALA,
DIOGENES ESTUARDO ZUMBANA ANDAGANA,
FRANKLIN RAUL MATAVACA TOAPANTA, JEFERSON
ERNESTO GUEVARA VILLAROEL, JORDY IVAN CANAR
JIMENEZ, OSCAR HARVEY JIMENEZ BARBOSA, PACHA
GAVILANES KLEBER HERMEL, WILMER STALIN
ZUMBANA ANDACHE, individually and on behalf of all
others similarly situated,

**CLASS/COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL REQUESTED**

                                        Plaintiffs,

            -against-

KING CONTRACTING GROUP NY INC., PRINCE
CONTRACTING NY, LLC, and RSC GROUP NY INC. and
BRETT STEINBERG and FRANCISCO TAVARES, as
individuals,

                                        Defendants.
-----------------------------------------------------------------------X

Plaintiffs **FRANKLIN VINICIO LASSO MEJIA, BRAYAN VINICIO CHARCO PACA, DEYBI LARRI VERA TOMALA, DIOGENES ESTUARDO ZUMBANA ANDAGANA, FRANKLIN RAUL MATAVACA TOAPANTA, JEFERSON ERNESTO GUEVARA VILLAROEL, JORDY IVAN CANAR JIMENEZ, OSCAR HARVEY JIMENEZ BARBOSA, PACHA GAVILANES KLEBER HERMEL, WILMER STALIN ZUMBANA ANDACHE,** individually and on behalf of all others similarly situated (hereinafter referred to as "Plaintiffs") by their attorneys at Helen F. Dalton & Associates, P.C., allege upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs, through undersigned counsel, brings this action against **KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. and BRETT STEINBERG and FRANCISCO TAVARES,**

1

**as individuals**, (collectively hereinafter, "<u>Defendants</u>") to recover damages for Defendants' egregious violations of state and federal wage and hour laws arising out of Plaintiffs' employment at **KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC.,** located at 28 Inwood Street, Yonkers, NY 10704.

2. As a result of the violations of Federal and New York State labor laws delineated below, Plaintiffs seek compensatory damages and liquidated damages. Plaintiffs also seek interest, attorneys' fees, costs, and all other legal and equitable remedies this Court deems appropriate.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the FLSA, 29 U.S.C. §216 and 28 U.S.C. §1331.

4. This Court has supplemental jurisdiction over Plaintiffs' other state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the EASTERN District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 & 2202.

## THE PARTIES
### *The Plaintiffs*

7. Plaintiff FRANKLIN VINICIO LASSO MEJIA residing at Corona, NY 11368 was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around February 2024 until in or around May 2024.

8. Plaintiff BRAYAN VINICIO CHARCO PACA residing at Flushing, NY 11368 was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around May 2021 until in or around May 2024.

9. Plaintiff DEYBI LARRI VERA TOMALA residing at Astoria, NY 11103 was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around March 2023 until in or around May 2024.

10. Plaintiff DIOGENES ESTUARDO ZUMBANA ANDAGANA residing at Corona, NY 11368 was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around March 2023 until in or around May 2024.

11. Plaintiff FRANKLIN RAUL MATAVACA TOAPANTA residing at Flushing, NY 11368 was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around March 2023 until in or around May 2024.

12. Plaintiff JEFERSON ERNESTO GUEVARA VILLAROEL residing at Corona, NY 11368 was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around December 2023 until in or around May 2024.

13. Plaintiff JORDY IVAN CANAR JIMENEZ residing at East Elmhurst, NY 11369 was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around January 2024 until in or around May 2024.

14. Plaintiff OSCAR HARVEY JIMENEZ BARBOSA residing at Richmond Hill, NY 11418 was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around September 2022 until in or around May 2024.

15. Plaintiff PACHA GAVILANES KLEBER HERMEL residing at Jackson Heights, NY 11372 was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around January 2024 until in or around May 2024.

16. Plaintiff WILMER STALIN ZUMBANA ANDACHE residing at Corona, NY 11368 was employed by KING CONTRACTING GROUP NY INC., PRINCE

CONTRACTING NY, LLC, and RSC GROUP NY INC., from in or around November 2023 until in or around May 2024.

### The Job Site

17. Plaintiffs are former employees of Defendants who performed work primarily at a job site located at 102 Middle Neck Road, Great Neck, NY 11021 ("the Job Site").

18. Upon information and belief, Defendants KING CONTRACTING GROUP NY INC., was the general contractor at the job site.

19. Upon information and belief, Defendant PRINCE CONTRACTING NY, LLC and RSC GROUP NY INC. were hired as subcontractors at the job site.

### *Corporate Defendants*
### King Contracting Group NY Inc.

20. Upon information and belief, King Contracting Group NY Inc., King Contracting Group of NY LLC, and King Contracting Group NY II LLC

21. Defendant, KING CONTRACTING GROUP NY INC., is a New York domestic business corporation, organized under the laws of the State of New York with a principal executive office located at 12 Railroad Pl., Belleville, NJ 07109.

22. Defendant, KING CONTRACTING GROUP NY INC. is registered in the New York Department of State, Division of Corporation with service of process address at 25-85 38th Street, Ground Level, Long Island City, NY 11103.

### Prince Contracting, NY LLC

23. Defendant, PRINCE CONTRACTING NY, LLC, is a New York domestic limited liability company, organized under the laws of the State of New York with a principal executive office located at 28 Inwood Street, Yonkers, NY 10704.

24. Defendant, PRINCE CONTRACTING NY, LLC is registered in the New York Department of State, Division of Corporation with service of process address at 483 Cherry Street, Bedford Hills, NY 10507.

### RSC Group NY Inc.

25. Defendant, RSC GROUP NY INC., is a New York domestic business corporation, organized under the laws of the State of New York with a principal executive office located at 28 Inwood Street, Yonkers, NY 10704.

26. Defendant, RSC GROUP NY INC. is registered in the New York Department of State, Division of Corporation with service of process address at 25-85 38th Street, Ground Level, Long Island City, NY 11103.

### Individual Defendants

### Brett Steinberg

27. At all relevant times hereto, Defendant BRETT STEINBERG owns and operates KING CONTRACTING GROUP NY INC.

28. Upon information and belief, Defendant BRETT STEINBERG was an agent of KING CONTRACTING GROUP NY INC.

29. At all relevant times hereto, At all relevant times hereto, Defendant BRETT STEINBERG was responsible for overseeing the daily operations of KING CONTRACTING GROUP NY INC.

30. At all relevant times hereto, BRETT STEINBERG had power and authority over all the final personnel decisions of KING CONTRACTING GROUP NY INC.

31. At all relevant times hereto, BRETT STEINBERG had the power and authority over all final payroll decisions of KING CONTRACTING GROUP NY INC. including the Plaintiffs.

32. At all relevant times hereto, BRETT STEINBERG had the exclusive final power to hire the employees of KING CONTRACTING GROUP NY INC. including the Plaintiffs.

33. At all relevant times hereto, BRETT STEINBERG had exclusive final power over the firing and terminating of the employees of KING CONTRACTING GROUP NY INC., including Plaintiffs.

34. At all relevant times hereto, BRETT STEINBERG was responsible for determining, establishing, and paying the wages of all employees of KING CONTRACTING GROUP NY INC., including the Plaintiffs, setting their work schedules, and maintaining all their employment records of the business.

35. Accordingly, at all relevant times hereto, Defendant BRETT STEINBERG was Plaintiffs' employer within the meaning and the intent of the FLSA, and the NYLL.

**Francisco Tavares**

36. At all relevant times hereto, Defendant FRANCISCO TAVARES owns and operates PRINCE CONTRACTING NY, LLC and RSC GROUP NY INC.

37. Upon information and belief, Defendant FRANCISCO TAVARES was an agent of PRINCE CONTRACTING NY, LLC and RSC GROUP NY INC.

38. At all relevant times hereto, At all relevant times hereto, Defendant FRANCISCO TAVARES was responsible for overseeing the daily operations of PRINCE CONTRACTING NY, LLC and RSC GROUP NY INC.

39. At all relevant times hereto, FRANCISCO TAVARES had power and authority over all the final personnel decisions of PRINCE CONTRACTING NY, LLC and RSC GROUP NY INC.

40. At all relevant times hereto, FRANCISCO TAVARES had the power and authority over all final payroll decisions of PRINCE CONTRACTING NY, LLC and RSC GROUP NY INC., including the Plaintiffs.

41. At all relevant times hereto, FRANCISCO TAVARES had the exclusive final power to hire the employees of PRINCE CONTRACTING NY, LLC and RSC GROUP NY INC., including the Plaintiffs.

42. At all relevant times hereto, FRANCISCO TAVARES had exclusive final power over the firing and terminating of the employees of PRINCE CONTRACTING NY, LLC and RSC GROUP NY INC., including Plaintiffs.

43. At all relevant times hereto, FRANCISCO TAVARES was responsible for determining, establishing, and paying the wages of all employees of PRINCE CONTRACTING NY, LLC and RSC GROUP NY INC., including the Plaintiffs, setting their work schedules, and maintaining all their employment records of the business.

44. Accordingly, at all relevant times hereto, Defendant FRANCISCO TAVARES was Plaintiffs' employer within the meaning and the intent of the FLSA, and the NYLL.

### Joint Employership of Plaintiffs

45. During all relevant times hereto, Corporate Defendants acted as a single employer in general and a joint employer with respect to Plaintiffs.

46. During all relevant times hereto, Corporate Defendants treated and/or held out the Plaintiffs as [being] employees of KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC.

47. During all relevant times hereto, Plaintiffs performed work at Corporate Defendants' job sites and on Corporate Defendants' projects, for the benefit of all Corporate Defendants.

48. Upon information and belief, Plaintiffs understood themselves as being employees of KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC.

49. Corporate Defendants' entities employed the same employees and/or benefited jointly from the work performed by the same employees, including Plaintiffs, performed the same type of work on/at the same job sites, and were jointly responsible for supervising the work performed by the same employees, including Plaintiffs, at those job sites.

50. Defendants were jointly responsible for issuing Plaintiffs their wages and setting Plaintiffs' work schedules and hours.

51. Defendants were jointly responsible for maintaining all of their employment records.

52. The Corporate Defendant entities sued herein functioned as a single integrated enterprise during Plaintiffs' employment by Defendants.

53. Accordingly, at all relevant times hereto, Defendants KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. were Plaintiffs' employers within the meaning and the intent of the FLSA, and the NYLL.

54. At all times relevant to the allegations contained in the complaint, Corporate Defendants were, and are, enterprises engaged in interstate commerce within the meaning of the FLSA in that KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. (i) have purchased goods, tools, and supplies for its business through the streams and channels of interstate commerce, and have had employees engaged in interstate commerce, and/ or in the production of goods intended for commerce, and handle, sell and otherwise work with

goods and material that have been moved in or produced for commerce by any person: and (ii) has had annual gross volume of sales of not less than $500,000.00.

### Joint Enterprise(s) of the Corporate Defendants

55. At all times relevant to this action, Corporate Defendants were enterprises as defined in Sec. 3(r) of the FLSA, 29 U.S.C. § 203(r).

56. At all times relevant to this action, Corporate Defendants were Plaintiffs' employers as defined by 29 U.S.C. § 203(d) and NYLL §§ 2(6), 190(3) and 651(6) and Corporate Defendants employed or jointly employed Plaintiffs.

57. Upon information and belief, Corporate Defendants shared a common or overlapping management, as all are operated by the individual Defendant(s) sued herein.

58. Upon information and belief, Corporate Defendants shared the same pay practices, policies and procedures, and/or payroll systems for paying employees of Corporate Defendants.

59. Upon information and belief, Corporate Defendants functioned as a single integrated enterprise for purposes of the FLSA/NYLL.

### FACTUAL ALLEGATIONS
### FRANKLIN VINICIO LASSO MEJIA

60. Plaintiff FRANKLIN VINICIO LASSO MEJIA was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a mason and construction helper while performing related miscellaneous duties for the Defendants, from in or around February 2024 until in or around May 2024.

61. During Plaintiff FRANKLIN VINICIO LASSO MEJIA's employment by the Defendants, Plaintiff regularly worked five (5) days per week.

62. Plaintiff regularly worked a schedule of shifts beginning from approximately 8:00 a.m. and regularly ending at approximately 4:30 p.m. or later, five (5) days per week, from in or around February 2024 until in or around May 2024.

63. Thus, Plaintiff was regularly required to work approximately forty-two-and-a-half (42.5) hours per week from in or around February 2024 until in or around May 2024.

64. During Plaintiff's hire in or around February 2024, Plaintiff was informed by Defendants that he would be paid an hourly rate of approximately $23.00 per hour.

65. However, Plaintiff was not compensated at all by Defendants for all his hours worked from in or around February 2024 until in or around May 2024.

66. Due to Defendant's non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

67. Defendants failed to pay Plaintiff FRANKLIN VINICIO LASSO MEJIA the legally prescribed minimum wage for all his hours from in or around February 2024 until in or around May 2024, a blatant violation of the minimum wage provisions contained in the FLSA and NYLL.

68. Although Plaintiff FRANKLIN VINICIO LASSO MEJIA worked approximately forty-two-and-a-half (42.5) hours or more hours per week from in or around February 2024 until in or around May 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

69. Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

70. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

71. Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

72. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

73. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

## BRAYAN VINICIO CHARCO PACA

74. Plaintiff BRAYAN VINICIO CHARCO PACA was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a mason and construction helper while performing related miscellaneous duties for the Defendants, from in or around March 2021 until in or around May 2024.

75. During Plaintiff BRAYAN VINICIO CHARCO PACA's employment by the Defendants, Plaintiff regularly worked five (5) days per week.

76. Plaintiff regularly worked a schedule of shifts beginning from approximately 7:00 a.m. and regularly ending at approximately 3:30 p.m. or later, three (3) to four (4) days per week and from approximately 7:00 a.m. and regularly ending at approximately 6:30 p.m. or later, one (1) to two (2) days per week, from in or around March 2021 until in or around May 2024.

77. Thus, Plaintiff was regularly required to work approximately forty-five-and-a-half (45.5) to forty-eight-and-a-half (48.5) hours per week from in or around the spring season of 2021, or approximately March 2021 until in or around May 2024.

78. Plaintiff BRAYAN VINICIO CHARCO PACA was paid by Defendants a flat hourly rate of approximately $25.00 per hour for all hours worked from in or around the spring season of 2021, or approximately March 2021 until in or around May 2024.

79. During Plaintiff's hire in or around March 2021, the agreement was that Plaintiff would receive his wages on a weekly basis. However, in or around January 2024, Defendants started making late payments to Plaintiff without explanation or notice.

80. As such, Plaintiff was paid by Defendants every three (3) weeks from in or around January 2024 until in or around May 2024.

81. Furthermore, Plaintiff was not compensated at all by Defendants for approximately five (5) work weeks of employment.

82. Although Plaintiff BRAYAN VINICIO CHARCO PACA worked approximately forty-five-and-a-half (45.5) to forty-eight-and-a-half (48.5) hours or more hours per week from in or around the spring season of 2021, or approximately March 2021 until in or around May 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

83. Defendants paid Plaintiff BRAYAN VINICIO CHARCO PACA every three (3) weeks, failing to timely pay Plaintiff for his first week of wages from in or around from in or around January 2024 until in or around May 2024 and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

84. Due to Defendant's late and non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

85. Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

86. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

87. Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

88. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

89. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and

proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

## **DEYBI LARRI VERA TOMALA**

90. Plaintiff DEYBI LARRI VERA TOMALA was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a construction helper while performing related miscellaneous duties for the Defendants, from in or around March 2023 until in or around May 2024.

91. During Plaintiff DEYBI LARRI VERA TOMALA's employment by the Defendants, Plaintiff regularly worked five (5) days per week.

92. Plaintiff regularly worked a schedule of shifts beginning from approximately 7:00 a.m. and regularly ending at approximately 3:30 p.m. or later, five (5) days per week, from in or around March 2023 until in or around May 2024.

93. Additionally, Plaintiff regularly worked approximately three (3) hours beyond his regular schedule, one (1) to two (2) days per week.

94. Thus, Plaintiff was regularly required to work approximately forty-five-and-a-half (45.5) to forty-eight-and-a-half (48.5) hours per week from in or around March 2023 until in or around May 2024.

95. Plaintiff DEYBI LARRI VERA TOMALA was paid by Defendants a flat hourly rate of approximately $22.00 per hour for all hours worked from in or around March 2023 until in or around December 2023 and approximately $35.00 per hour for all hours worked from in or around January 2024 until in or around May 2024.

96. During Plaintiff's hire in or around March 2023, the agreement was that Plaintiff would receive his wages on a weekly basis. However, in or around January 2024, Defendants started making late payments to Plaintiff without explanation or notice.

97. As such, Plaintiff was paid by Defendants on a bi-weekly basis from in or around January 2024 until in or around May 2024.

98. Furthermore, Plaintiff was not compensated at all by Defendants for approximately five (5) work weeks of employment.

99. Although Plaintiff DEYBI LARRI VERA TOMALA worked approximately forty-five-and-a-half (45.5) to forty-eight-and-a-half (48.5) hours or more hours per week

from in or around March 2023 until in or around May 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

100.    Defendants paid Plaintiff DEYBI LARRI VERA TOMALA on a bi-weekly basis, failing to timely pay Plaintiff for his first week of wages from in or around from in or around January 2024 until in or around May 2024 and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

101.    Due to Defendant's late and non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

102.    Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

103.    Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

104.    Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

105.    As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

106.    Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

### DIOGENES ESTUARDO ZUMBANA ANDAGANA

107.    Plaintiff DIOGENES ESTUARDO ZUMBANA ANDAGANA was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a construction worker while performing related miscellaneous duties for the Defendants, from in or around March 2023 until in or around May 2024.

108.    During Plaintiff DIOGENES ESTUARDO ZUMBANA ANDAGANA's employment by the Defendants, Plaintiff regularly worked five (5) to six (6) days per week.

109.    Plaintiff regularly worked a schedule of shifts beginning from approximately 8:00 a.m. and regularly ending at approximately 5:30 p.m. or later, five (5) to six (6) days per week, from in or around March 2023 until in or around May 2024.

110.    Thus, Plaintiff was regularly required to work approximately forty-seven-and-a-half (47.5) to fifty-seven (57) hours per week from in or around March 2023 until in or around May 2024.

111.    Plaintiff DIOGENES ESTUARDO ZUMBANA ANDAGANA was paid by Defendants a flat hourly rate of approximately $35.00 per hour for all hours worked from in or around March 2023 until in or around December 2023 and approximately $38.00 per hour for all hours worked from in or around January 2024 until in or around May 2024.

112.    During Plaintiff's hire in or around March 2023, the agreement was that Plaintiff would receive his wages on a weekly basis. However, in or around April 2024, Defendants started making late payments to Plaintiff without explanation or notice.

113.    As such, Plaintiff was paid by Defendants on a bi-weekly basis from in or around April 2024 until in or around May 2024.

114.    Furthermore, Plaintiff was not compensated at all by Defendants for approximately five (5) work weeks of employment.

115.    Although Plaintiff DIOGENES ESTUARDO ZUMBANA ANDAGANA worked approximately forty-seven-and-a-half (47.5) to fifty-seven (57) hours or more hours per week from in or around March 2023 until in or around May 2024, Defendants did

not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

116.    Defendants paid Plaintiff DIOGENES ESTUARDO ZUMBANA ANDAGANA on a bi-weekly basis, failing to timely pay Plaintiff for his first week of wages from in or around from in or around April 2024 until in or around May 2024 and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

117.    Due to Defendant's late and non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

118.    Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

119.    Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

120.    Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

121.    As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

122.    Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

### FRANKLIN RAUL MATAVACA TAOPANTA

123.   Plaintiff FRANKLIN RAUL MATAVACA TOAPANTA was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a construction helper while performing related miscellaneous duties for the Defendants, from in or around March 2023 until in or around May 2024.

124.   During Plaintiff FRANKLIN RAUL MATAVACA TOAPANTA's employment by the Defendants, Plaintiff regularly worked five (5) days per week.

125.   Plaintiff regularly worked a schedule of shifts beginning from approximately 7:00 a.m. and regularly ending at approximately 3:30 p.m. or later, three (3) days per week and from approximately 8:00 a.m. and regularly ending at approximately 4:30 p.m. or later, two (2) days per week, from in or around March 2023 until in or around May 2024.

126.   Thus, Plaintiff was regularly required to work approximately forty-seven-and-a-half (47.5) hours per week from in or around March 2023 until in or around May 2024.

127.   Plaintiff FRANKLIN RAUL MATAVACA TOAPANTA was paid by Defendants a flat hourly rate of approximately $25.00 per hour for all hours worked from in or around March 2023 until in or around May 2024.

128.   During Plaintiff's hire in or around March 2023, the agreement was that Plaintiff would receive his wages on a weekly basis. However, in or around January 2024, Defendants started making late payments to Plaintiff without explanation or notice.

129.   As such, Plaintiff was paid by Defendants every three (3) weeks from in or around January 2024 until in or around May 2024.

130.   Furthermore, Plaintiff was not compensated at all by Defendants for approximately five (5) work weeks of employment.

131.   Although Plaintiff FRANKLIN RAUL MATAVACA TOAPANTA worked approximately forty-seven-and-a-half (47.5) hours or more hours per week from in or around March 2023 until in or around May 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

132.   Defendants paid Plaintiff FRANKLIN RAUL MATAVACA TOAPANTA every three (3) weeks, failing to timely pay Plaintiff for his first week of wages from in or

around from in or around January 2024 until in or around May 2024 and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

133.    Due to Defendant's late and non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

134.    Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

135.    Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

136.    Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

137.    As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

138.    Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

### JEFERSON ERNESTO GUEVARA VILLAROEL

139.    Plaintiff JEFERSON ERNESTO GUEVARA VILLAROEL was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a construction worker while performing related

miscellaneous duties for the Defendants, from in or around December 2023 until in or around May 2024.

140.    During Plaintiff JEFERSON ERNESTO GUEVARA VILLAROEL's employment by the Defendants, Plaintiff regularly worked five (5) to six (6) days per week.

141.    Plaintiff regularly worked a schedule of shifts beginning from approximately 8:00 a.m. and regularly ending at approximately 4:30 p.m. or later, three (3) to four (4) days per week and from approximately 8:00 a.m. and regularly ending at approximately 5:30 p.m. or later, one (1) to two (2) days per week, from in or around December 2023 until in or around May 2024.

142.    Thus, Plaintiff was regularly required to work approximately forty-three-and-a-half (43.5) to fifty-two (52) hours per week from in or around December 2023 until in or around May 2024.

143.    Plaintiff JEFERSON ERNESTO GUEVARA VILLAROEL was paid by Defendants a flat hourly rate of approximately $28.00 per hour for all hours worked from in or around December 2023 until in or around May 2024.

144.    During Plaintiff's hire in or around December 2023, the agreement was that Plaintiff would receive his wages on a weekly basis. However, in or around January 2024, Defendants started making late payments to Plaintiff without explanation or notice.

145.    As such, Plaintiff was paid by Defendants on a bi-weekly basis from in or around January 2024 until in or around May 2024.

146.    Furthermore, Plaintiff was not compensated at all by Defendants for approximately five (5) work weeks of employment.

147.    Although Plaintiff JEFERSON ERNESTO GUEVARA VILLAROEL worked approximately forty-three-and-a-half (43.5) to fifty-two (52) hours or more hours per week from in or around December 2023 until in or around May 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

148.    Defendants paid Plaintiff JEFERSON ERNESTO GUEVARA VILLAROEL on a bi-weekly basis, failing to timely pay Plaintiff for his first week of wages from in or around from in or around January 2024 until in or around May 2024 and thus violated

the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

149.    Due to Defendant's late and non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

150.    Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

151.    Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

152.    Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

153.    As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

154.    Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

### JORDY IVAN CANAR JIMENEZ

155.    Plaintiff JORDY IVAN CANAR JIMENEZ was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a construction worker while performing related miscellaneous duties for the Defendants, from in or around January 2024 until in or around May 2024.

156.   During Plaintiff JORDY IVAN CANAR JIMENEZ's employment by the Defendants, Plaintiff regularly worked five (5) to six (6) days per week.

157.   Plaintiff regularly worked a schedule of shifts beginning from approximately 8:00 a.m. each workday and regularly ending at approximately 5:30 p.m. or later, five (5) to six (6) days per week from in or around January 2024 until in or around May 2024.

158.   Thus, Plaintiff was regularly required to work approximately forty-seven-and-a-half (47.5) to fifty-seven (57) hours per week from in or around January 2024 until in or around May 2024.

159.   Plaintiff JORDY IVAN CANAR JIMENEZ was paid by Defendants a flat hourly rate of approximately $28.00 per hour for all hours worked from in or around January 2024 until in or around May 2024.

160.   During Plaintiff's hire in or around January 2024, the agreement was that Plaintiff would receive his wages on a weekly basis. However, in or around the same month, Defendants started making late payments to Plaintiff without explanation or notice.

161.   As such, Plaintiff was paid by Defendants every three (3) weeks from in or around January 2024 until in or around May 2024.

162.   Furthermore, Plaintiff was not compensated at all by Defendants for approximately five (5) work weeks of employment.

163.   Although Plaintiff JORDY IVAN CANAR JIMENEZ worked approximately forty-seven-and-a-half (47.5) to fifty-seven (57) hours or more hours per week from in or around January 2024 until in or around May 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

164.   Defendants paid Plaintiff JORDY IVAN CANAR JIMENEZ every three (3) weeks, failing to timely pay Plaintiff for his first week of wages from in or around from in or around January 2024 until in or around May 2024 and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

165.   Due to Defendant's late and non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

166.   Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

167.   Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

168.   Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

169.   As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

170.   Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

### OSCAR HARVEY JIMENEZ BARBOSA

171.   Plaintiff OSCAR HARVEY JIMENEZ BARBOSA was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a construction helper while performing related miscellaneous duties for the Defendants, from in or around September 2022 until in or around May 2024.

172.   During Plaintiff OSCAR HARVEY JIMENEZ BARBOSA's employment by the Defendants, Plaintiff regularly worked five (5) days per week.

173.    Plaintiff regularly worked a schedule of shifts beginning from approximately 7:00 a.m. and regularly ending at approximately 3:30 p.m. or later, three (3) to four (4) days per week and from approximately 7:00 a.m. and regularly ending at approximately 5:30 p.m. or later, one (1) to two (2) days per week, from in or around September 2022 until in or around May 2024.

174.    Thus, Plaintiff was regularly required to work approximately forty-four-and-a-half (44.5) to forty-six-and-a-half (46.5) hours per week from in or around September 2022 until in or around May 2024.

175.    Plaintiff OSCAR HARVEY JIMENEZ BARBOSA was paid by Defendants a flat hourly rate of approximately $25.00 per hour for all hours worked from in or around September 2022 until in or around May 2024.

176.    During Plaintiff's hire in or around September 2022, the agreement was that Plaintiff would receive his wages on a weekly basis. However, in or around January 2024, Defendants started making late payments to Plaintiff without explanation or notice.

177.    As such, Plaintiff was paid by Defendants on a bi-weekly basis from in or around January 2024 until in or around May 2024.

178.    Furthermore, Plaintiff was not compensated at all by Defendants for approximately five (5) work weeks of employment.

179.    Although Plaintiff OSCAR HARVEY JIMENEZ BARBOSA worked approximately forty-four-and-a-half (44.5) to forty-six-and-a-half (46.5) hours or more hours per week from in or around September 2022 until in or around May 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

180.    Defendants paid Plaintiff OSCAR HARVEY JIMENEZ BARBOSA on a bi-weekly basis, failing to timely pay Plaintiff for his first week of wages from in or around from in or around January 2024 until in or around May 2024 and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

181.    Due to Defendant's late and non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

182.    Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

183.    Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

184.    Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

185.    As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

186.    Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

**PACHA GAVILANES KLEBER HERMEL**

187.    Plaintiff PACHA GAVILANES KLEBER HERMEL was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a construction helper while performing related miscellaneous duties for the Defendants, from in or around January 2024 until in or around May 2024.

188.    During Plaintiff PACHA GAVILANES KLEBER HERMEL's employment by the Defendants, Plaintiff regularly worked five (5) to six (6) days per week.

23

189.    Plaintiff regularly worked a schedule of shifts beginning from approximately 8:00 a.m. and regularly ending at approximately 5:30 p.m. or later, five (5) to six (6) days per week, from in or around January 2024 until in or around May 2024.

190.    Thus, Plaintiff was regularly required to work approximately forty-seven-and-a-half (47.5) to fifty-seven (57) hours per week from in or around January 2024 until in or around May 2024.

191.    Plaintiff PACHA GAVILANES KLEBER HERMEL was paid by Defendants a flat hourly rate of approximately $25.00 per hour for all hours worked from in or around January 2024 until in or around May 2024.

192.    During Plaintiff's hire in or around January 2024, the agreement was that Plaintiff would receive his wages on a weekly basis. However, in or around the same month, Defendants started making late payments to Plaintiff without explanation or notice.

193.    As such, Plaintiff was paid by Defendants on a bi-weekly basis from in or around January 2024 until in or around May 2024.

194.    Furthermore, Plaintiff was not compensated at all by Defendants for approximately five (5) work weeks of employment.

195.    Although Plaintiff PACHA GAVILANES KLEBER HERMEL worked approximately forty-seven-and-a-half (47.5) to fifty-seven (57) hours or more hours per week from in or around January 2024 until in or around May 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

196.    Defendants paid Plaintiff PACHA GAVILANES KLEBER HERMEL on a bi-weekly basis, failing to timely pay Plaintiff for his first week of wages from in or around from in or around January 2024 until in or around May 2024 and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

197.    Due to Defendant's late and non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

198. Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

199. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

200. Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

201. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

202. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

## WILMER STALIN ZUMBANA ANDACHE

203. Plaintiff WILMER STALIN ZUMBANA ANDACHE was employed by KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC. as a construction worker while performing related miscellaneous duties for the Defendants, from in or around November 2023 until in or around May 2024.

204. During Plaintiff WILMER STALIN ZUMBANA ANDACHE's employment by the Defendants, Plaintiff regularly worked five (5) to six (6) days per week.

205.    Plaintiff regularly worked a schedule of shifts beginning from approximately 8:00 a.m. and regularly ending at approximately 5:30 p.m. or later, five (5)  to six (6) days per week, from in or around November 2023 until in or around May 2024.

206.    Thus, Plaintiff was regularly required to work approximately forty-seven-and-a-half (47.5) to fifty-seven (57) hours per week from in or around November 2023 until in or around May 2024.

207.    Plaintiff WILMER STALIN ZUMBANA ANDACHE was paid by Defendants a flat hourly rate of approximately $32.00 per hour for all hours worked from in or around November 2023 until in or around May 2024.

208.    During Plaintiff's hire in or around November 2023, the agreement was that Plaintiff would receive his wages on a weekly basis. However, in or around April 2024, Defendants started making late payments to Plaintiff without explanation or notice.

209.    As such, Plaintiff was paid by Defendants on a bi-weekly basis from in or around April 2024 until in or around May 2024.

210.    Furthermore, Plaintiff was not compensated at all by Defendants for approximately five (5) work weeks of employment.

211.    Although Plaintiff WILMER STALIN ZUMBANA ANDACHE worked approximately forty-seven-and-a-half (47.5) to fifty-seven (57) hours or more hours per week from in or around November 2023 until in or around May 2024, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

212.    Defendants paid Plaintiff WILMER STALIN ZUMBANA ANDACHE on a bi-weekly basis, failing to timely pay Plaintiff for his first week of wages from in or around from in or around April 2024 until in or around May 2024 and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

213.    Due to Defendant's late and non-payments, Plaintiff experienced a myriad of financial difficulties specifically in covering his regular expenses such as bills, food, transportation, and other expenses.

214.    Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA and NYLL.

215.    Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

216.    Upon information and belief, Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.

217.    As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

218.    Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

## COLLECTIVE ACTION ALLEGATIONS

219.    Plaintiffs bring this action on behalf of themselves, and other employees similarly situated as authorized under the FLSA, 29 U.S.C. § 216(b).  The employees similarly situated are the collective class.

220.    Collective Class: All persons who are or have been employed by the Defendants as masons, construction workers, construction helpers, or other similarly titled personnel with substantially similar job requirements and pay provisions, who were performing the same sort of functions for Defendants, other than the executive and management positions, who have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay required minimum and overtime wage compensation.

221.    Upon information and belief, Defendants employed approximately 100 or more employees within the relevant time period who were subjected to similar payment structures.

222.    Upon information and belief, Defendants suffered and permitted Plaintiffs and the Collective Class to work more than forty hours per week without appropriate overtime compensation.

223.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

224.    Upon information and belief, Defendants had knowledge that Plaintiffs and the Collective Class performed work requiring overtime pay.

225.    Defendants' conduct as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective Class.

226.    Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay in violation of the FLSA and NYLL, who would benefit from the issuance of a Court-supervised notice of the present lawsuit, and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

227.    The questions of law and fact common to the putative class predominate over any questions affecting only individual members.

228.    The claims of Plaintiffs are typical of the claims of the putative class.

229.    Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class.

230.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FEDERAL RULE OF CIVIL PROCEDURE RULE 23 CLASS ALLEGATIONS**

231.    Plaintiffs sue on their own behalf and as the class representative (hereinafter referred to as the "New York Class Representative") and bring the Second and Fourth Causes of Action on their own behalf and as a class action, on behalf of those similarly

situated, pursuant to Fed. R. Civ. P. 23(a) and (b). The Fed. R. Civ. P. 23 Class is defined as:

Masons, construction workers, construction helpers, or other similarly titled personnel who are currently or have been employed by the Defendants at KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC GROUP NY INC., located at 12 Railroad Pl., Belleville, NJ 07109 and at 28 Inwood Street, Yonkers, NY 10704, and who worked greater than 40 hours per week (hereinafter referred to as the "New York Class") without receiving time and a half for all hours over 40 each workweek during the 6 years prior to the filing of the Complaint (hereinafter referred to as the "New York Class Period").

232.   The persons in the New York Class are so numerous that joinder of all members is impracticable. Although, the precise number of such persons is unknown, and facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are greater than 100 members of the New York Class during the New York Class Period.

233.   There are questions of law and fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to:

a.   Whether Defendants unlawfully failed to pay overtime compensation and spread of hours compensation in violation of and within the meaning of the NYLL;

b.   Whether the New York Class Representatives and New York Class are nonexempt from entitlement to overtime compensation for hours worked under the pay requirement of the NYLL;

c.   Whether Defendants failed to keep accurate and complete time records for all hours worked by the New York Class Representatives and the New York Class;

d.   Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law;

e.   The proper measure of damages sustained by the New York Class Representative and the New York Class; and

f.   Whether Defendants should be enjoined from such violations in the future.

234.    The New York Class Representatives will fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the class. The Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

235.    A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The damages sustained by individual class members are modest compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

236.    Further, the New York Class Representative and the New York Class have been equally affected by Defendants' failure to pay overtime wages, spread of hours compensation and unpaid wages. Moreover, members of the New York Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

237.    Defendants have acted or refused to act on grounds generally applicable to the New York Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

238.    Plaintiffs' claims are typical of those of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the non-payment of overtime wages and spread of hours compensation and the failure to keep adequate records. The job duties of Plaintiffs are typical of those of the class members.

The New York Class Representative intends to send notice to all members of the New York Class to the extent required by Rule 23.

## FIRST CAUSE OF ACTION
### Overtime Wages Under The Fair Labor Standards Act

239.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

240.    Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. §216(b) *et seq*.

241.    At all times relevant to this action, Plaintiffs were engaged in interstate commerce and/or was engaged in the production of goods for/through the channels of interstate commerce within the meaning of 29 U.S.C. §§206(a) and 207(a), *et seq*.

242.    At all times relevant to this action, Defendants were employers engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

243.    Defendants willfully failed to pay Plaintiffs' overtime wages for all hours regularly worked in excess of forty (40) hours per week at a wage rate of one and a half (1.5) times the regular wage, to which Plaintiffs were entitled under 29 U.S.C. §§206(a) in violation of 29 U.S.C. §207(a)(1).

244.    Defendants' violations of the FLSA as described in this Complaint have been willful and intentional. Defendants have not made any good faith effort to comply with their obligations under the FLSA with respect to the compensation of the Plaintiffs.

245.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

## <u>SECOND CAUSE OF ACTION</u>
### Overtime Wages Under New York Labor Law

246.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

247.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

248.    Defendants failed to pay Plaintiffs' overtime wages for hours worked in excess of forty hours per week at a wage rate of one and a half (1.5) times the regular wage to which Plaintiffs were entitled under New York Labor Law §652, in violation of 12 N.Y.C.R.R. 137-1.3, *et seq*.

249.    Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an

amount equal to their unpaid overtime wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest in accordance with NY Labor Law §198(1-a).

### THIRD CAUSE OF ACTION
### Minimum Wages Under New York Labor Law

250.    Plaintiffs re-allege and incorporate by reference all allegations contained in all preceding paragraphs.

251.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL §§2 and 651.

252.    At all times relevant to this action, Defendants were employers within the meaning of the NYLL.

253.    Defendants failed to pay Plaintiffs' wages for hours worked in violation of New York Labor Law Article 6.

254.    Defendants failed to credit or compensate Plaintiffs the applicable minimum hourly wage for all hours worked, in violation of the New York Minimum Wage Act, specifically NYLL §652.

255.    Defendants failed to pay Plaintiffs the required minimum wage, which Plaintiffs were entitled under NYLL §652, in violation of 12 N. Y. C. R. R. 137-1.3.

256.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an amount equal to their unpaid minimum wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest in accordance with NYLL §198 (1-a).

### FOURTH CAUSE OF ACTION
### Unpaid Wages Under The Fair Labor Standards Act

257.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

258.    Defendants willfully failed to pay Plaintiffs' wages for hours worked in violation of 29 U.S.C. §206(a).

259.    Defendants' violations of the FLSA as described in this Complaint have been willful and intentional. Defendants have not made a good effort to comply with the FLSA with respect to compensating the Plaintiffs.

260.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

## FIFTH CAUSE OF ACTION
### Unpaid Wages Under The New York Labor Law

261.    Plaintiffs incorporate by reference all allegations in all preceding paragraphs.

262.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

263.    Defendants failed to pay Plaintiffs' wages for hours worked in violation of New York Labor Law Article 6.

264.    Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from the Defendants, jointly and severally, their unpaid wages and an amount equal to their unpaid wages in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, including interest in accordance with N.Y. Labor Law §198 (1-a).

## SIXTH CAUSE OF ACTION
### Violation of Frequency of Pay Under New York Labor Law

265.    Plaintiffs re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

266.    Defendants willfully violated the rights of Plaintiffs by failing to pay their wages owed on a weekly basis in which his wages were earned, in violation of New York Labor Law § 191.

267.    Defendants' failure to pay wages on the statutorily prescribed schedule was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

268.    Due to defendants' New York Labor Law violations, Plaintiffs are entitled to recover from defendants liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198 and § 663(1).

## SEVENTH CAUSE OF ACTION
### Violation of the Wage Statement Requirements of the New York Labor Law

269.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

270.    Defendants failed to provide Plaintiffs with wage statements, upon each payment of their wages, as required by NYLL §195(3).

271.    Defendants are liable to Plaintiffs in the amount of $5,000.00, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### Violation of the Notice and Recordkeeping Requirements of the New York Labor Law

272.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

273.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

274.    Defendants are liable to Plaintiffs in the amount of $5,000.00, together with costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that judgment be granted:

a.    Declaring Defendants' conduct complained herein to be in violation of the Plaintiffs' rights under the FLSA, the New York Labor Law, and its regulations.

b.    Awarding Plaintiffs' unpaid overtime wages;

c.    Awarding Plaintiffs' unpaid minimum wages;

d.    Awarding Plaintiffs' unpaid wages;

e.    Awarding Plaintiffs' unpaid wages for Defendants' failure to timely pay Plaintiffs' wages;

f.  Awarding Plaintiffs liquidated damages pursuant to 29 U.S.C. §216 and New York Labor Law §§198(1-a), 663(1);

g.  Awarding Plaintiffs prejudgment and post-judgment interest;

h.  Awarding Plaintiffs, the costs of this action together with reasonable attorneys' fees; together with such further relief as this court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by the complaint.

Dated:  November 27, 2024
        Kew Gardens, NY

*Roman Avshalumov*
Roman Avshalumov (RA 5508)
Helen F. Dalton & Associates, P.C.
80-02 Kew Gardens Road, Suite 601
Kew Gardens, New York 11415
Telephone: 718-263-9591

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FRANKLIN VINICIO LASSO MEJIA, BRAYAN VINICIO CHARCO PACA, DEYBI LARRI
VERA TOMALA, DIOGENES ESTUARDO ZUMBANA ANDAGANA, FRANKLIN RAUL
MATAVACA TOAPANTA, JEFERSON ERNESTO GUEVARA VILLAROEL, JORDY IVAN
CANAR JIMENEZ, OSCAR HARVEY JIMENEZ BARBOSA, PACHA GAVILANES
KLEBER HERMEL, WILMER STALIN ZUMBANA ANDACHE, individually and on behalf
of all others similarly situated,

Plaintiffs,

-against-

KING CONTRACTING GROUP NY INC., PRINCE CONTRACTING NY, LLC, and RSC
GROUP NY INC. and BRETT STEINBERG and  FRANCISCO TAVARES, as individuals,

Defendants,

## CLASS/COLLECTIVE ACTION COMPLAINT

*Jury Trial Demanded*

### HELEN F. DALTON & ASSOCIATES, P.C.
*Attorneys for the Plaintiffs*
80-02 Kew Gardens Road
Suite 601
Kew Gardens, New York 11415
Phone: (718) 263-9591
Fax: (718) 263-9598

To:

*Service via Secretary of State:*
**KING CONTRACTING GROUP NY INC. (DOS ID: 5753360)**
25-85 38th Street, Ground Level, Long Island City, NY 11103

**PRINCE CONTRACTING NY, LLC (DOS ID: 36229728)**
483 Cherry Street, Bedford Hills, NY 10507

**RSC GROUP NY INC. (DOS ID: 5753372)**
25-85 38th Street, Ground Level, Long Island City, NY 11103

*via Personal Service:*

**KING CONTRACTING GROUP NY INC.**
102 Middle Neck Road, Great Neck, NY 11021

**PRINCE CONTRACTING NY, LLC**
28 Inwood Street, Yonkers, NY 10704

**RSC GROUP NY INC. (DOS ID: 5753372)**
28 Inwood Street, Yonkers, NY 10704

**BRETT STEINBERG**
102 Middle Neck Road, Great Neck, NY 11021

**FRANCISCO TAVARES**
28 Inwood Street, Yonkers, NY 10704